UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEREMY SORRELL,

                      Plaintiffs,

   v.

DEPARTMENT OF CORRECTIONS (DOC), and AMARU, P.A.,

                      Defendants.

No. C10-5639 RBL/KLS

**REPORT AND RECOMMENDATION**
**Noted for: October 21, 2011**

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 12. Plaintiff did not file a response. His failure to do so may be considered by the Court as an admission that Defendants' motion has merit. CR 7(b) Local Rules W.D. Wash. Defendants move for summary judgment on the grounds that Plaintiff has not exhausted his administrative remedies and because the DOC is not subject to suit under 28 U.S.C. § 1983. Having carefully reviewed Defendants' motion for summary judgment and balance of the record, the Court finds that the motion should be granted because Plaintiff did not exhaust his administrative remedies.

## BACKGROUND

Plaintiff Jeremy Sorrell is an inmate in the custody of the Washington State Department of Corrections (DOC) and is incarcerated at the Washington Corrections Center (WCC) in Shelton, Washington. Mr. Sorrell alleges he did not receive proper medical treatment when DOC employee, Russell Amaru, P.A., treated him for scabbed pimples instead of a flesh eating infection. ECF No. 5.

REPORT AND RECOMMENDATION - 1

# FACTS

## A. Plaintiff's Medical Treatment

Defendant Russell Amaru is a physician's assistant who was formerly employed at the WCC providing primary care to WCC inmates, including treatment of hypertension, diabetes, asthma, psoriasis, seizure disorders, fractured bones, and lacerations. ECF No. 14 (Declaration of Russell Amaru), ¶¶ 4-5. On June 30, 2010, Defendant Russell Amaru treated Mr. Sorrell for sores on Mr. Sorrell's arms and legs. *Id.* (Amaru Decl.), ¶ 6.

Mr. Sorrell believed that the sores on his arms and legs were MRSA. *Id.* (Amaru Decl.), ¶ 7. MRSA is an abbreviation for the term "Methicillin Resistant Staphylococcus Aureus, a very aggressive bacterium that is well known to cause large, weeping, purulent abscesses in patients." *Id.* Defendant Amaru is well versed in MRSA lesions and has identified and surgically intervened on hundreds of MRSA abscesses. *Id.* Defendant Amaru determined that Mr. Sorrell's sores were merely pimples. *Id.* Mr. Sorrell had several 1-3 millimeters in diameter scabs that had neither purulence nor seepage. *Id.* Upon examination, Defendant Amaru believed that Mr. Sorrell was forcibly removing his scabs. *Id.* Mr. Sorrell denied that he removed his scabs, but Defendant Amaru found Mr. Sorrell to be highly agitated and aggressive. *Id.*

Defendant Amaru's prescribed treatment was an education consisting of how to apply soap and water to the pimples, and the importance of leaving the scabs in place. *Id.* (Amaru Decl.), ¶ 7. Mr. Sorell has not requested additional medical care for his skin sores since June 30, 2010. *Id.*, ¶ 10.

## B. Washington Offender Grievance Program (OGP)

Tamara Rowden is the Grievance Program Manager for the Office of Correctional Operations, Washington State Department of Corrections (DOC). ECF No. 15 (Declaration of

REPORT AND RECOMMENDATION - 2

Tamara Rowden), ¶ 2. According to Ms. Rowden, the Washington Offender Grievance Program (OGP) has been in existence since the early 1980's and was implemented on a department-wide basis in 1985. *Id.* ¶ 3. Under Washington's OGP, an offender may file a grievance over a wide range of aspects of his/her incarceration. *Id.* ¶ 4. Inmates may file grievances challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions. An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; and 7) disciplinary actions. *Id.* The OGP provides a wide range of remedies available to inmates. *Id.* These remedies include: 1) restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure. *Id.*, ¶ 5.

The grievance procedure consists of four levels of review. *Id.* (Rowden Decl.), ¶ 6. At Level 0, the complaint or informal level, the offender writes a complaint; the grievance coordinator then pursues informal resolution of the issue, returns the complaint to the offender for additional information, or accepts the complaint and processes it as a formal grievance. *Id.* At Level I, the local grievance coordinator responds to the issues raised by the offender. *Id.* If the offender is not satisfied with the response to his Level I grievance, he may appeal the grievance to Level II. *Id.* All appeals and initial grievances received at Level II are investigated, and the prison superintendent responds. *Id.* If the offender is still not satisfied with the response,

REPORT AND RECOMMENDATION - 3

he may make a Level III appeal to the Department headquarters, where the issue is reinvestigated and administrators respond. *Id.*

DOC's grievance system is well known to inmates. Currently over 20,000 grievances are filed per year system wide. An inmate must file his grievance at the facility where the concerns arose. He cannot file at another facility because staff does not have jurisdiction over any other facility. *Id.* (Rowden Decl.), ¶ 7.

Ms. Rowden has reviewed DOC's official grievance records concerning Plaintiff Jeremy Sorrell, DOC #329801, and has determined that he filed a grievance on July 13, 2010 regarding medical care he received at the WCC on June 30, 2010. *Id.* (Rowden Decl.), ¶ 8.

**C.     Mr. Sorrell's Grievance**

According to DOC's official grievance records, Mr. Sorrell filed an initial grievance on July 13, 2010 under Grievance Log No. 1014337. ECF No. 15 (Rowden Decl.), ¶ 10; ECF No. 13 (Declaration of Peter Helmberger), Exh. 1. On July 14, 2010, Grievance Coordinator Jeff Watson informed Mr. Sorrell that medical staff evaluated him and he received appropriate treatment per medical staff. The grievance coordinator stated that if Mr. Sorrell was not satisfied, he could sign up for sick call to be reevaluated. ECF No. 15 (Rowden Decl.), ¶ 10.

Mr. Sorrell appealed his grievance to Level II on July 19, 2010. He reiterated his concern that the boils on his skin were both eating his flesh and leaving him permanently scarred. He requested to see a "real" doctor, get tested for MRSA, and receive anti-biotic ointment. ECF No. 15 (Rowden Decl.), ¶ 11; ECF No. 13 (Helmberger Decl.), Exh. 2. DOC performed an investigation into Mr. Sorrell's grievance on August 10, 2010. ECF No. 13 (Helmberger Decl.), Ex. 3. The investigator interviewed Defendant Amaru and Dr. Longano, who both confirmed that experienced providers can tell upon examination when an infection is MRSA, but conceded

REPORT AND RECOMMENDATION - 4

that the only way to be positive an infection is MRSA is through a lab test. *Id.*; ECF No. 14 (Amaru Decl.), ¶ 10. On August 10, 2010, DOC responded that it understood Mr. Sorrell's anxiety concerning MRSA, but firmly reiterated the treatment choice of Defendant Amaru. ECF No. 13 (Helmberger Decl.), Exh. 2.

Mr. Sorrell did not appeal to Level III. ECF No. 15 (Rowden Decl.), ¶ 12. According to DOC's Grievance Program Manager Towden, Mr. Sorrell did not exhaust his options under OGP because he did not appeal his grievance to Level III, the final level. *Id.*

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023-24 (9th Cir. 2004). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff must "produce at least

some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

## DISCUSSION

The Prison Litigation Reform Act of 1995 (PLRA) mandates that:

> *No action shall be brought with respect to prison conditions* under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e [emphasis added].

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought to court." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 918-19 (2007). Inmates must exhaust their prison grievance remedies before filing suit if the prison grievance system is capable of providing any relief or taking any action in

REPORT AND RECOMMENDATION - 6

response to the grievance. "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 740, 742 (2001).

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 543 U.S. 516, 532 (2002). The underlying premise is that requiring exhaustion "reduce[s] the quantity and improve[s] the quality of prisoner suits, [and] affords corrections officials an opportunity to address complaints internally. . . . In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.*

Requiring proper exhaustion serves all of the goals of the rulings in *Nussle* and *Booth*, providing inmates an effective incentive to use the prison grievance system and thereby provides prisons with a fair opportunity to correct their own mistakes. *Woodford v. Ngo*, 548 U.S. 81, 93-94, 126 S. Ct. 2378 (2006). This is particularly critical to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id.* at 94 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 [1973]). Courts have a limited role in reviewing the difficult and complex task of modern prison administration. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 [1987]) (urging a policy of judicial restraint as prison administration requires expertise, planning and the commitment of resources, all of which are the responsibility of the legislative and executive branches). *Turner v. Safley*, 482 U.S. at 84-85.

The exhaustion requirement applies to all claims in a complaint; it is not enough to exhaust administrative remedies as to some claims and then use that exhaustion as a jurisdictional hook on which to hang unexhausted claims in a federal civil rights action. *See Graves v. Norris,* 218 F.3d 884, 885 (8th Cir. 2000); *Accord Terrell v. Brewer,* 935 F.2d 1015, 1018-19 (9th Cir. 1990) (in prisoner action brought under *Bivens* where only a portion of the claims had been exhausted, "the proper remedy [was] dismissal without prejudice"). This total exhaustion rule best promotes the purposes of the exhaustion requirement, which include allowing a prison to take responsive action, filtering out frivolous cases, and creating administrative records. *See Porter v. Nussle,* 534 U.S. 516, 523-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

Here, it is undisputed that there is a well-established grievance procedure available to Washington state inmates, including Mr. Sorrell. The record reflects that Mr. Sorell filed one grievance relating to the medical treatment of his skin condition and after the initial grievance was denied, Mr. Sorrell appealed his grievance to Level II. After an investigation and the denial of his Level II appeal, Mr. Sorrell took no further action. ECF No. 15 (Rowden Decl.); ECF No. 13 (Helmberger Decl.), Exhs. 1-3.

Mr. Sorrell does not dispute these facts. Under the OGP, if Mr. Sorrell was dissatisfied with the response received from the institution with respect to any type of grievance, Mr. Sorell would have been required to file a Level III appeal to DOC headquarters in order to properly exhaust the claim. Mr. Sorrell did not do so. He also offers no argument as to why he should be relieved of that obligation. Because Mr. Sorrell has failed to demonstrate that he provided DOC headquarters with an opportunity to review the substance of his complaint after review was

REPORT AND RECOMMENDATION - 8

completed at the institutional level, this Court concludes that plaintiff has not properly exhausted his claims against Defendants and therefore, the claim should be dismissed without prejudice.

Because the Court finds that Mr. Sorrell has failed to exhaust his administrative remedies, the Court lacks discretion to resolve any claims on the merits. *See, e.g., Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir.1999) (suit filed by prisoner before administrative remedies have been exhausted must be dismissed; district court lacks discretion to resolve claim on merits, even if prisoner exhausts intra-prison remedies before judgment). Therefore, the Court does not address the merits of Mr. Sorrell's claims or other issues raised in Defendants' motion for summary judgment.

## CONCLUSION

The undersigned recommends that Defendants' motion for summary judgment (ECF No. 12) be **GRANTED** and that Plaintiffs' claims against Defendants be **dismissed without prejudice** for failure to exhaust.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **October 21, 2011**, as noted in the caption.

**DATED** this __3rd__ day of October, 2011.

Karen L. Strombom
United States Magistrate Judge